Argued May 21, reversed June 28, 1976

GILTNER, *Respondent,*
*v.*
COMMODORE CONTRACT CARRIERS et al,
*Appellants.*
(No. 416 090, CA 5614)
551 P2d 118

Argued and submitted May 21, 1976.

*Keith D. Skelton,* Portland, argued the cause and filed the brief for appellants.

*Raymond J. Conboy,* Portland, argued the cause for respondent. With him on the brief were Donald N. Atchison and Pozzi, Wilson & Atchison, Portland.

Before Schwab, Chief Judge, and Foley and Thornton, Judges.

FOLEY, J.

**FOLEY, J.**

Employer appeals from a circuit court determination that claimant is permanently and totally disabled. We reverse.

Claimant, now 38, received a back injury in July 1970 while working as a truck driver. Claimant had a previous back injury in 1967 which resulted in a back fusion in 1968. Since the July 1970 injury claimant has undergone two attempted repairs of the fusion, one in November 1970 and a re-fusion in September 1971. Apparently the fusions are now successful. Shortly after the last operation the treating physician, Dr. Abele, was of the opinion that claimant would not be able to work at heavy labor and could engage only in very light work or a sheltered occupation because he was not able to bend, lift or strain the lower back without experiencing considerable discomfort.

The referee's opinion and order recites claimant's activities and examinations up to the time of the hearing on August 16, 1974:

"* * * * *

"Claimant attempted in mid-1973 to rake some gravel into some ruts caused by a heavy truck and, after 15 or 20 minutes, aggravated his back so bad that he was placed on two or three weeks of physiotherapy by Dr. Abele. Dr. Edwin G. Robinson, an examining physician, entered a diagnosis of the claimant of (1) post-status of one laminectomy and three spinal fusions with associated considerable fibrosis and scarring of the low back area, probably playing a large part in limited motion, and (2) chronic strain of the lumbar spine and intermittent sciatica. Dr. Robinson recommended DPD [Disability Prevention Division] evaluation and Vocational Rehabilitation. He did not believe that the claimant should be put through any real back testing program to note his endurance for same, because it would probably throw him into another acute exacerbation.

"The psychological evaluation of claimant while at DPD indicated claimant was born and raised in Louisiana the son of 'a very poor cotton farmer.' He came

to Oregon in 1955. Claimant receives Social Security disability benefits together with his award and the income from one rental property. His wife works as a floor lady in a sleeping bag manufacturing plant. Dr. Perkins, the clinical psychologist, entered a prognosis that the return of the claimant to gainful employment appear[s] to be very poor at the present time because of limited resources, generally limited aptitudes, and want of motivation to return to work. She recommended psychological counseling.

"Examination by the Back Clinic indicated claimant could bend over to reach within 26 inches of the floor and hyperextension was limited to about 20% of normal. Right and left lateral flexions were 50% of normal and largely pain-free. He could tiptoe walk alright on the right but poor on the left because of his ankle fusion. Straight leg raising was to $50°$ bilaterally. There was no cross-legged pain or limitation of motion and bent leg testing was normal to $90°$. There was local tenderness at L3-4. The Clinic was of the opinion that claimant had a total loss function of back rated at moderately severe and the loss of function due to this injury as being mildly moderate.

"At the hearing Dr. John Abele testified on claimant's behalf stating that he thought the claimant was permanently and totally disabled. He did not believe that he could do work as a sandblaster because of the fused ankle that he has which prevents him from going up and down ladders with loads and maintaining balance. He thought the claimant's education was lacking although he was 'sharp' enough. He did not believe that there was any work that claimant could do on a sustained basis. On cross-examination, he stated he did not disagree with the Back Clinic that the claimant could not return to his regular employment but was a good candidate for Vocational Rehabilitation. The doctor stated he has tried to lead claimant into Vocational Rehabilitation endeavors.

"Claimant testified that he came to Portland and worked in carpentry and after two years in the U. S. Army as a mechanic did sandblasting and painting and after his 1967 injury with resulting laminectomy and fusion purchased a truck to move house trailers. He states that any more he 'dinks' around his car and pick-

up. He normally has to lie down each day. He stated he tried to go to Alaska for a family reunion but returned in three weeks. He went to Vocational Rehabilitation for a five-minute interview, but they had no suggestions for him.

"Dr. George Ennis, job counselor, testified in his opinion that there were no jobs in the economy that claimant could do, given his age, education, experience, background, and physical problem.

"\* \* \* \* \*."

The referee found that claimant had shown that his award of 20 degrees unscheduled low back disability was inadequate; however, he did not believe claimant had established that he was permanently and totally disabled. The Board agreed with that conclusion. The circuit court made no findings. It merely entered judgment awarding permanent total disability. Although this is a close case, we are unable to agree with the circuit court's decision that claimant is entitled to an award of permanent total disability.

The referee and the Board found that claimant was not highly motivated to return to work since the household income was sufficient to supply claimant's needs and that claimant had not actively sought or facilitated any retraining. The Back Evaluation Clinic rated loss of function due to claimant's injury as mildly moderate and recommended retraining under the Vocational Rehabilitation Division.

Prior to the industrial accident herein involved, claimant was gainfully employed despite his prior operations and fusions. He has not been gainfully employed since. We conclude that the referee's and Board's determination that he has sustained a loss of earning capacity of 60 percent is proper.

Reversed.